[Sac. No. 1777. Department One.—June 28, 1910.]

FLORENCE A. HARDY, Respondent, v. FRANK J. MAYHEW et al., Appellants.

WILL—DECREE OF PARTIAL DISTRIBUTION—CONSTRUCTION OF WILL DETERMINED BY DECREE.—A decree of partial distribution, as modified on appeal, is a conclusive adjudication as to the construction to be given to the will in question, and the rights of the parties affected thereby must be measured solely by it.

ID.—LEGACY FOR USE DURING LIFE WITH REMAINDER IN UNUSED PORTION—POWER OF DISPOSAL OF PRINCIPAL BY LIFE TENANT.—A decree, distributing a pecuniary legacy to a person "for his use, during his

natural life, and on his death the unused portion of said sum" to the three children and a grandchild of the testatrix in equal shares, creates a mere life estate in the first taker for the term of his natural life, with the power of disposing of the principal, even to the extent of entirely consuming it, in such ways as might be consistent with his "use" thereof, with a vested remainder in the unused portion to the children and grandchild. The second takers do not take by descent, as heirs of the life tenant, but as remaindermen under the will of the testatrix.

ID.—LIMITATIONS ON USE BY LIFE TENANT—DISPOSITION BY WILL OR GIFT UNAUTHORIZED.—The "use" by the life tenant, authorized by such decree, is only such personal use as he might desire to make of the money *for himself,* and did not include a disposition of practically the whole thereof either by will or by gift during his life.

ID.—GIFT OVER NOT VOID.—The mere fact that the first taker is invested with the power to dispose of or consume the whole of the property for certain purposes does not invest him with the absolute ownership thereof and render the gift-over void, when taking the whole instrument together it is concluded that the intent was to give only an estate for life, with limited power of disposal or consumption.

ID.—EFFECT OF DECREE DISTRIBUTING PROPERTY TO REMAINDERMEN.—A decree so distributing the legacy operated to remove the property from the estate of the testatrix and to distribute to the remaindermen the interest which they were thereby determined to have under the will. This result follows, notwithstanding the remaindermen were not entitled to the immediate possession of the property distributed.

ID.—LIFE TENANT NOT EXPRESS TRUSTEE.—The will of the testatrix did not create any trust in the property, within the meaning of section 1699 of the Code of Civil Procedure, providing for the settlement of the accounts of a trustee by the probate court. That section refers exclusively to express trusts created by will. The first taker became a trustee only in the sense that the duty rested upon him, as a life tenant merely, to have due regard for the rights of those in remainder, a duty in the nature of a trust constituting him an implied or *quasi* trustee for the remaindermen.

ID.—DEATH OF LIFE TENANT—RIGHTS OF REMAINDERMEN FIXED WITHOUT FURTHER PROBATE PROCEEDINGS—RECOVERY FROM DONEES OF LIFE TENANT.—Upon the death of the life tenant, no further proceedings were essential in the estate of the testatrix to vest in the remaindermen the right to immediate possession of such of the property as had not been appropriated by him to an authorized use; nor was any proceeding in the estate of the life tenant essential to the right of the remaindermen to recover the property to which they were entitled from those to whom it had been given by him without authority, and who had full notice of the limits of his authority in regard thereto.

ID.—REPRESENTATIVE OF LIFE TENANT NOT NECESSARY PARTY TO ACTION
AGAINST DONEES.—The remaindermen are not restricted to proceedings against the estate of the life tenant for any improper disposition of the property by him, but can recover the same in the hands of any person who had taken it by gift, and the legal representative of the estate of the life tenant is not a necessary party to such an action.

APPEAL from a judgment of the Superior Court of Sacramento County. P. J. Shields, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, and W. T. Phipps, for Appellants.

George & Hinsdale, and C. E. McLaughlin, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendants from a judgment given against them in an action brought by plaintiff to obtain a decree that she is the owner of an undivided one fourth of certain property, real and personal, possessed by them and of which they claim to be the absolute owners, and to obtain an accounting as to said property and a delivery to her of her share or the reasonable value thereof.

The defendants are Frank J. Mayhew and Charles P. Mayhew, sons, and Mary E. Phipps, daughter of Judge Horace Allen Mayhew, who died March 3, 1907, and of Mary Jane Mayhew, who died August 3, 1903, and W. T. Phipps, husband of said Mary E. Phipps. The plaintiff is the sole surviving child of George H. Mayhew, a deceased son of said Judge Mayhew and Mary Jane Mayhew. The property involved in this action is an undivided one fourth of practically all the property delivered to Judge Mayhew under a decree of partial distribution in the matter of the estate of said Mary Jane Mayhew. Judge Mayhew claimed on his application for partial distribution that under the will of Mary Jane Mayhew he was entitled to have the property, a legacy of forty thousand dollars, distributed to him absolutely. His claim in his behalf was resisted by plaintiff. The superior court having jurisdiction of the estate construed the will as giving him only the use of this money with the right to the custody of the principal, for his life, with remainder over to the other parties named in its decree, and distributed to him the sum

CLVIII Cal.—7

of forty thousand dollars of the moneys of said estate "for his use, during his natural life, and on his death said sum to Chas. P. Mayhew, Frank J. Mayhew, the sons, to Mary E. Phipps, the daughter, and to Florence A. Hardy, the grand-daughter of said deceased, in equal shares, each one fourth thereof," and directed the executors to pay said forty thousand dollars to him "for his use for the term of his natural life." Appeals were taken by both parties, and the district court of appeal, concluding that the will contemplated that the legatee might use the principal sum according to his discretion for his "comfort or pleasure" even to the extent of using it all, modified the decree by inserting the words "the unused portion of" before the words "said sum to Chas. P. Mayhew," etc., making the decree read: "for his use, during his natural life, and on his death the unused portion of said sum to Chas. P. Mayhew," etc. (*Estate of Mayhew,* 4 Cal. App. 162, [87 Pac. 417].)

The basic theory of plaintiff's case is that under this decree Judge Mayhew took only a life interest, with the power to use during his life as much of the principal as he deemed proper for his own use, and that the other distributees took the remainder, viz.: the whole property subject only to such life interest in Judge Mayhew with such power on his part to use the principal, and that upon his death such distributees became entitled absolutely to the possession of all of said property that had not been so used—that Judge Mayhew had no right or power under such decree to dispose of any of the *corpus* of such property by *gift,* and that those so taking from him by gift took no more than he had the right to give, and must account to the distributees therefor. The case made by the complaint is, substantially, that a few months before his death, with the intent to deprive plaintiff of the share in said property that would otherwise come to her upon his death, Judge Mayhew gave practically all of the same to his three surviving children, the other distributees, and that they received the same with the same intent and hold the same. The trial court so found, finding further that the property so received by Mary E. Phipps was of the value of seventeen thousand five hundred dollars, that received by Frank J. Mayhew eleven thousand dollars, and that received by C. P. Mayhew, ten thousand seven hundred

dollars. .There were also allegations of conspiracy and undue influence on the part of defendants in this matter, but the evidence demonstrates and the trial court found that there was no basis for any such charge and that the gifts so made by Judge Mayhew were not solicited in any way by any of the defendants but were absolutely free and voluntary. On October 26, 1906, each of the three children, at the suggestion of Mr. Phipps, executed a writing reciting that in consideration of gifts made by Judge Mayhew he promised and agreed in future to pay to him the sum of fifty dollars per month, so long as he shall live. It very clearly appears from the evidence that all of the parties regarded the transfers by Judge Mayhew as gifts.

We are satisfied that plaintiff's theory stated above is correct. The decree of partial distribution in Mrs. Mayhew's estate as modified by the district court of appeal, is, of course, a conclusive adjudication as to the construction to be given to Mrs. Mayhew's will in this regard, and the rights of the respective parties must be measured solely by that decree. Though entirely immaterial in view of the conclusiveness of this decree, it may be said in passing that we are satisfied that the decree as modified was certainly as favorable to Judge Mayhew as the will warranted. The decree distributed the property to him "for his use, during his natural life, and on his death the *unused* portion of said sum to" the three children and the grandchild in equal shares. Herein was clearly a distribution to Judge Mayhew of a life estate simply, an estate limited by express terms to his natural life, with the power of disposing of the principal, even to the extent of entirely consuming it, in such ways as might be consistent with his "use" thereof, and a distribution of the remainder to plaintiff and the three children in equal shares. This power of disposition and consumption in the life tenant is to be implied solely from the words "unused portion of" inserted in the decree by the district court of appeal, for without this addition the word "use" in the decree, applied as it was to the money distributed, would mean a use without impairment of the principal. The added words, however, necessarily give to the word "use" a different meaning, and make it include not only a mere appropriation of the profits or interest but also an impairment or consumption by the distributee of a

part or even all of the principal, to the extent that he might deem proper in his use of the same. But it appears very clear to us, and our conclusion is fully supported by the language of the opinion of the district court of appeal, which we have the right to consider in determining the sense in which the word was used by that court, that the "use" authorized was only such personal use as the distributee might desire to make of the money *for himself*, and that it did not include a disposition of practically the whole thereof either by will or by gift during his life, especially a° gift made for the very purpose of excluding one of the remaindermen from participating in what otherwise would have been "unused" by him at the time of his death. If the district court of appeal had concluded that such was the effect of the provisions of the will in this regard, it would necessarily have modified the decree of the superior court in accord with the contention of the petitioner, making it one whereby the forty thousand dollars was distributed to him absolutely and not merely for his life. As determined by the modified decree the interest given to Judge Mayhew was the kind of interest referred to in 2 Underhill on Wills at section 689, a life interest by its express terms, with the power of disposing of a part or all of the property itself for a particular purpose only, as for the support and maintenance of the life tenant, with a valid gift over to the other distributees which might be disappointed by the exercise of his power by the life tenant and the application of the principal to the purposes indicated. As to such a life tenant Mr. Underhill says substantially in another section, he may not use the proceeds of a sale of the property for another purpose, he cannot give them away, nor can he devise the land, and also that those who take what remains unused, do not take by descent as heirs of the first taker, but as purchasers and remaindermen under the will of the testator (sec. 687). The author is here speaking of real property, but the rule declared is necessarily applicable to such personal property as money. Given a life interest therein, with the power to use the principal for certain purposes, the life tenant may not use it for any other purpose and may not give it away. The distinction between the case of an intended gift of an absolute title to one with an attempted gift over of simply "what remains unexpended" by the donee

at the time of his death, where the gift over is void because in derogation of the absolute fee given the first taker, and the case of a gift of a life estate with a power of disposition for a particular purpose only, with an express gift over of what remains unused for such purpose, is recognized by all the authorities. The cases supporting our conclusion are numerous, and a few of these may properly be referred to. In *Downing Exr.* v. *Johnson,* 45 Tenn. 229, the gift by will was to the testator's wife of the whole estate "for and during her natural life, to be by her freely possessed and enjoyed," and "the balance . . . that may be on hand at the death of my wife, I dispose of in the following manner," etc. Personal property was involved. It was held that this created a life estate in the wife, with power to consume such as she may deem proper for her support and maintenance, and a remainder in the second takers. It was said that a court might restrain fraudulent and extravagant waste by the life tenant. In *Lewis* v. *Pitman,* 101 Mo. 281, [14 S. W. 52], it was held, personal property being involved, that where an express life estate is created, an added power of disposition does not convert the estate into a fee, and that there was no power to dispose of the property by will. In *Burleigh* v. *Clough,* 52 N. H. 267, [13 Am. Rep. 23], the gift was of all the estate to the wife to her use and disposal during her natural life, and what is remaining at her decease, undisposed of by her to others named. It was held that the wife took only a life estate, with power to dispose of such of the property, even to the extent of the whole, as her needs, her comfort, or her gratification should demand, and that the provision as to a gift over created a *vested* remainder. The question whether she had power to dispose of the property by will was left undecided, the court concluding that her will did not affirmatively show any attempt to execute the power. In *Green* v. *Hewitt,* 97 Ill. 113, [37 Am. Rep. 102], a gift of real and personal property to the wife "as long as she remains my widow. At the expiration of that time the whole, or whatever remains, to descend to my daughters" was held to be one to the wife for widowhood only, with a vested remainder in the daughter. In *Eubank* v. *Smiley,* 130 Ind. 393, [29 N. E. 919], a gift to the wife of all the husband's property "to do with and dispose of after my decease as she may think best" and at decease of the wife, the

*real estate* to be equally divided among my heirs, was held to give only a life estate in the real estate. Here the wife had conveyed the real estate to a daughter for a nominal consideration, and the deed was held to convey only a life estate. In *Gadd* v. *Stover*, 113 Mich. 689, [71 N. W. 1111], the husband's will gave all his property, real and personal, and including a farm, to his wife "to use the same as she may desire and wish for and during her natural life, with full power and authority to grant and convey, in her own name, any part or portion," etc., and gave the property remaining at her death to others. The wife conveyed the farm to a daughter, taking back an agreement for support during her life. It was held that the wife had a life estate only, and that the power of disposition was limited to specific purposes. The court held the conveyance to the daughter ineffectual to defeat the remaindermen, saying, among other things: "It is evident that the intent and purpose of the conveyance made to Mrs. Stover was to subvert the intent of the testator," and that the limitation of good faith will be affixed by the law in determining the effect of the conveyance. In *Goudie* v. *Johnston*, 109 Ind. 427, [10 N. E. 296], the gift was to the wife "for her use during her natural lifetime . . . she to have the control and management of the same, and at her death all of said personal estate remaining . . . shall go to," etc. Personal property only was involved in the case. It was held that the wife took only a life estate, with the power perhaps to consume such as was necessary for her support, but certainly without absolute power of disposition for any other purpose. In *Johnson* v. *Johnson*, 51 Ohio St. 446, [38 N. E. 61], the will gave to the wife all property, real and personal, with full power to dispose of the same as she may think proper, but if, at the time of her decease, any of said property shall remain unconsumed, the same was to be equally divided among his brothers and sisters and their children. According to the allegations of the complaint, the wife during her lifetime had given all of the property to the defendant, and the suit was one by the remaindermen for an accounting, etc. The court held that the intention of the testator was to give his wife a life estate only, with power to consume so much thereof during her lifetime as she might deem necessary for her support and maintenance, and to give the property subject to this estate and use to his brothers and

sisters and their children—that the wife had no power to dispose of the fee by gift during her life or by will at her death—that the brothers and sisters and their children had a vested remainder in so much of the estate as should remain unconsumed at the wife's death, and that one coming into possession of the property with knowledge of the terms upon which it was held by the wife could be held accountable therefor to the remaindermen.   (See, also, *Giles* v. *Little,* 104 U. S. 291; *Brant* v. *Virginia etc. Co.,* 93 U. S. 326; *Mansfield* v. *Shelton,* 67 Conn. 390, [52 Am. St. Rep. 285, 35 Atl. 271]; *Chase* v. *Ladd,* 153 Mass. 126, [25 Am. St. Rep. 614, 26 N. E. 429]; *Smith* v. *Bell,* 6 Pet. (U. S.) 68; *Wager* v. *Wager,* 96 N. Y. 164, 172.)   It appears to be settled by the overwhelming weight of authority that the mere fact that the first taker is invested with the power to dispose of or consume the whole of the property for certain purposes does not invest him with the absolute ownership thereof and render the gift over void, where taking the whole instrument together it is concluded that the intent was to give only an estate for life, with limited power of disposal or consumption.   As expressly indicated in some of the decisions referred to above, the interest of the remaindermen expressly designated, in this case Chas. P. Mayhew, Frank J. Mayhew, Mary E. Phipps, and plaintiff, was a vested remainder.   Neither the person in whom nor the event upon which it was limited to take effect was in any degree uncertain.   (Civ. Code., secs. 693 to 695.)

The decree of distribution operated to remove all the property from the estate of Mary Jane Mayhew and to distribute to the remaindermen the interest which they were thereby determined to have under the will.   The claim of defendants that distribution can be had only as to those persons who are entitled to immediate possession of the property distributed is not well founded and is not supported by the decision cited, *Martinovitch* v. *Marsicano,* 137 Cal. 357, [70 Pac. 459].   The court in that case was discussing the question of the power of the court in probate on distribution in regard to one having a judgment lien on the property of an heir, devisee, or legatee, and it was in regard to such a person that it said that distribution can be made to only these persons entitled to receive "immediate possession of the property distributed," meaning simply that the rights of third persons against those entitled to

take directly from the deceased as heirs, devisees, or legatees were not within the proper scope of distribution proceedings. Necessarily any interest in property created by a will is to be adjudicated and distributed by decree of distribution, and the fact that it is a future interest in respect to the time of enjoyment is immaterial. There was no trust created by the will of Mary Jane Mayhew within the meaning of section 1699 of the Code of Civil Procedure, providing for the settlement, of the accounts of the trustee by the probate court. That section refers exclusively to express trusts created by will. Judge Mayhew was a trustee only in the sense that the duty rested on him, as a life tenant merely, to have due regard for the rights of those in remainder, a duty in the nature of a trust constituting him an implied or *quasi* trustee *for the remaindermen.* (See Perry on Trusts, sec. 540; *Johnson* v. *Johnson,* 51 Ohio St. 446, [38 N. E. 61].) There is therefore nothing in the claim that further proceedings were essential in the estate of Mary Jane Mayhew upon the death of Judge Mayhew to vest in the remaindermen the right to immediate possession of such of the property as had not been appropriated by him to an authorized use.

Nor was any proceeding in the estate of Judge Mayhew essential to the right of the remaindermen to recover the property to which they were entitled from those to whom it had been given by him without authority, and who had full notice of the limits of his authority in regard thereto. As we have seen, such remaindermen do not take by descent, as heirs of Judge Mayhew, but as remaindermen under the will of Mary Jane Mayhew. The property constituted no part of *his* estate. The remaindermen were not restricted to proceedings against his estate for any improper disposition of their property, but could recover the same in the hands of any person who had taken it by gift, and the legal representative of the estate of Judge Mayhew was not a necessary party to such an action.

In view of what we have said, it is clear to us that the complaint stated a good cause of action within the jurisdiction of the superior court of Sacramento County, and that the demurrer thereto was properly overruled. We have carefully examined the complaint with reference to the claim that the trial court erred in denying a motion to strike out portions

thereof, and are entirely satisfied that if there was any error at all in the ruling, it was entirely without prejudice to defendants.

The findings clearly sustain the judgment. It is claimed that the evidence is insufficient to support some of these findings. No attack is made in the briefs on finding 1, which is that paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 14, and 18 of the first cause of action set forth in the complaint are true. By these findings are established the death of Mary Jane Mayhew, the proceedings leading to the distribution of the property, the distribution of the same, the delivery of the possession of the property to Judge Mayhew under the modified decree, including in lieu of six thousand five hundred dollars of the legacy of forty thousand dollars principal and $1863.38 interest thereon, a lot of land in the city of Sacramento, and in lieu of ten thousand dollars thereof, ten Realty Syndicate Investment certificates of the par value of one thousand dollars each, and $25,363.58 in cash, the death of Judge Mayhew on March 3, 1907, the demand of plaintiff on defendants for an accounting as to such of the property as they had received from Judge Mayhew and the delivery to her of her share and the refusal of defendants, together with the claim on their part that she had no interest therein. Finding 8 is in favor of defendants to the extent that it finds that neither of the defendants "by any act or words, conspired, persuaded, enticed or induced Horace Allen Mayhew to give . . . to the defendants or either or any of them, any property whatever." But it further finds that for the purpose and with the intent to deprive plaintiff of her share in the money and property elsewhere described in the findings, they received from Judge Mayhew gifts of the same, and hold and claim the same as their own. This property is described in findings 12, 13, 16, and 17, by which it is found that for the purpose of depriving plaintiff of her share, Judge Mayhew gave to Mrs. Phipps, Charles P. Mayhew, and Frank J. Mayhew property received by him under such decree, as follows: To Mary E. Phipps, the six thousand five hundred dollar lot of land in Sacramento, nine of the Realty Syndicate certificates valued at nine thousand dollars and two thousand dollars in cash; to Charles P. Mayhew certain notes and mortgages and money and property amounting to a total value of ten thousand seven

hundred dollars; to Frank J. Mayhew certain notes and mort-
gages, money, and property, aggregating in value eleven thou-
sand dollars. It is claimed that these findings are not sus-
tained by the evidence in that there is no evidence to show
that the property so received by the respondents was property
received by Judge Mayhew under the decree of distribution.
It is not claimed by the defendants that the evidence is insuf-
ficient to support the conclusion that property of the kind
and to the value specified was given by Judge Mayhew to
them. In addition to the fact that the evidence is sufficient
to support a conclusion that nearly all of the property given
to defendants by Judge Mayhew was clearly identified as
property received by him under the decree, a careful exam-
ination of the pleadings satisfies us that it must be held that
it stands admitted thereby that such property as was so given
to them was property so received by him under the decree.
We are of the opinion also that the evidence was sufficient to
support the conclusion of the trial court that the intent and
purpose of Judge Mayhew and the defendants in the making
and acceptance of these gifts was to subvert the intent of the
decree of distribution to the extent of depriving plaintiff of
any share in the property distributed thereby. Doubtless all
felt that solely by reason of the death of her father, George
H. Mayhew, plaintiff was given by the decree of distribution
property that Mary Jane Mayhew had never contemplated
that she would receive under her will, and it is not surprising
that Judge Mayhew, in view of such a belief, and also in view
of the opposition made by plaintiff to his petition for distribu-
tion, desired to exclude her from participation in the re-
mainder. But the effect of the decree in her behalf could not
legally be obviated in the manner attempted.

Most of the alleged errors of law in the matter of the re-
ception of evidence are disposed of by what we have already
said in discussing other points. We have considered such as
are not so disposed of, and find in the rulings of the court
thereon no error warranting reversal.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.