SECURITY–FIRST NATIONAL BANK, as Executor of the Estate of Alice C. D. Riley, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 992–59–Y.

United States District Court
S. D. California.
Central Division.

Feb. 29, 1960.

Brady, Nossaman & Walker, Joseph L. Wyatt, Jr., Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Robert H. Wyshak, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

By this action Security-First National Bank, to be referred to as Bank, as executor of the estate of Alice C. D. Riley, deceased, to be referred to as decedent, seeks to recover income taxes and interest erroneously or illegally assessed or collected for the calendar and taxable years 1953 and 1954 in the aggregate amount of $483.57 for the year 1953 and $5,153.02 for the year 1954.[1] In the main, the facts are not in dispute. Indeed, most of them are stipulated.

## I.

### Conceded Facts.

Harrison B. Riley died on or about June 15, 1944, leaving a Will dated December 4, 1943, and leaving as his surviving widow Alice C. D. Riley, the decedent, represented by plaintiff. Mrs. Riley died August 9, 1955.

On or about July 7, 1944, the will of Harrison B. Riley was admitted to probate in the Superior Court of the State of California, in and for the County of Los Angeles, in proceedings entitled "In the Matter of the Estate of Harrison B. Riley, Deceased", No. 233648. The will of Harrison B. Riley provided, among other things:

"Three—I give and bequeath to my much loved wife, Alice C. D. Riley, of said Pasadena, all of my estate and the income thereof, to have and to hold for the duration of her natural life, and with power to sell and dispose of the same or any part thereof absolutely and to transfer an indefeasible title to the purchasers thereof.

"Four—I also devise to my said wife the power to consume such part of the capital of my said estate as she may from time to time find to be necessary for her support, comfort, health and service.

"Five—Subject and subordinate to all of the foregoing provisions, I give, devise and bequeath the remainder of my said estate in whatever form it may consist at the decease of my said wife to my devoted children: Donald Riley of Chicago, Illinois, and Dorothy Riley Brown of Pasadena aforesaid, in the following proportions, to wit: To said Donald, one-third of said remainder and to said Dorothy, two-thirds of said remainder."

On or about August 2, 1946, the State court in said proceedings No. 233648 entered a decree entitled "Order Settling Final Account and For Distribution of Estate". Distribution was so effected to Alice C. D. Riley in 1946. The rights of Mrs. Riley under the will and order of distribution continued through the taxable years 1953 and 1954.

On March 10, 1954, Mrs. Riley filed a fiduciary income tax return, Form 1041, for the calendar year 1953, reporting net capital gains of $2,260.86. On April 15, 1955, Mrs. Riley filed a fiduciary income tax return, Form 1041, for the calendar year 1954, reporting net capital gains of $32,400.08. The capital assets sold in the years 1953 and 1954 which resulted in the capital gains and losses claimed for those years were assets (securities) which were, in both instances, part of the principal of the life estate created by the will and order of distribution in the estate of Harrison B. Riley. Claims for refund for the years 1953 and 1954 were duly and seasonably filed on January 11, 1957, and rejected.

In addition to these facts, it was either stipulated or proved in the record that Mrs. Riley's practice of filing fiduciary returns as a legal life tenant under the name of "Harrison B. Riley Trust" was begun in 1947. The first of them was prepared by W. V. Carroll of Chicago, Illinois, a personal friend of Mrs. Riley and other members of her family and her business and investments adviser. Mr. Carroll prepared the return upon the advice of counsel recommending that such a fiduciary return be filed on the theory that

1. 28 U.S.C.A. § 1346(a) (1).

"regardless of whether Mrs. Riley established a trust recognizable as such under the substantive law of California, it did establish a fiduciary relationship and a trust which will be recognized for income tax purposes."

It is the contention of the Bank that under the Internal Revenue Code of 1939 [2] and the regulations relating to it,[3] and the corresponding Section of the Internal Revenue Code of 1954,[4] as to which the 1939 regulations apply, and a decision of the Court of Appeals for the Ninth Circuit,[5] the decedent was not taxable as a trustee, in either year.

## II.

### Principles Involved.

In considering the matter we should remember the admonition given by a great Justice of the Supreme Court, that we should eschew "slavery to forms or phrases",[6] and that of another great Justice that

"taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." [7]

Since the inception of income taxation the courts have uniformly held that the object of the Congress was "to use its power to the full extent." [8] And for this reason the courts have held that the Government is not confined to the traditional classification of interests or estates, but that, on the contrary,

"It may tax, not only ownership, but any right or privilege that is a constituent of ownership. Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 268, 53 S.Ct. 345, 77 L.Ed. 730; Bromley v. McCaughn, 280 U.S. 124, 136, 50 S.Ct. 46, 74 L. Ed. 226. Liability may rest upon the enjoyment by the taxpayer of

2. 1939 Internal Revenue Code, § 161(a), 26 U.S.C.A. § 161(a), which, in part, reads as follows:
   "§ 161. Imposition of tax
   "(a) Application of tax. The taxes imposed by this chapter (other than the tax imposed by subchapter E, relating to tax on self-employment income) upon individuals shall apply to the income of estates or of any kind of property held in trust, including—
   "(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;"

3. 1939 Income Tax Regulations, Regulations 118, § 39.3797-3(a) which, in part, reads as follows:
   "§ 39.3797-3. Association distinguished from trust
   "(a) The term 'trust,' as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under the ordinary rules applied in chancery and probate courts. The beneficiaries of such a trust generally do no more than accept the benefits thereof and are not the voluntary planners or creators of the trust arrangement. Even though the beneficiaries do create such a trust, it is ordinarily done to conserve the trust property without undertaking any activity not strictly necessary to the attainment of that object."

4. 1954 Internal Revenue Code, § 7851(a) (1) (A), 26 U.S.C.A. § 7851(a) (1) (A).

5. United States v. Cooke, 9 Cir., 1955, 228 F.2d 667. Two district courts in our Circuit have since followed this decision: Brown v. United States, D.C. Hawaii, 58-2 USTC § 9861, arising under the law of Hawaii, and, De Bonchamps v. United States, D.C.N.D.Cal., 58-1 USTC § 9325. The above cases are on appeal before the Court of Appeals for the Ninth Circuit, and were argued before it *en banc* on September 4, 1959 and reargued on November 13, 1959. *A motion by the Government to defer the trial of the present case until the decision of the Court of Appeals is announced was denied and the cause was tried, the facts being as appears in the text of the opinion.*

6. Burnet v. Wells, 1933, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L.Ed. 1439.

7. Corliss v. Bowers, 1930, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916.

8. Irwin v. Gavit, 1925, 268 U.S. 161, 166, 45 S.Ct. 475, 476, 69 L.Ed. 897.

914

privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis. A margin must be allowed for the play of legislative judgment." [9]

These principles have been adhered to consistently and the courts have upheld as taxable "all gains except those specifically exempted." [10]

█ Profits derived from sale of capital assets have been held, in the absence of other considerations, to be taxable in the hands of the person entitled to the income from the property.[11] The application of this principle brought into play the consideration to be given to State law in the creation of certain rights and the rule adopted is that the legal rights and interests are created by the State but their taxability is determined by

federal law.[12] This is important because, while at times the federal Government, in the matter of taxation, may disregard entities, as understood by State Law,[13] the individual rights created by the State must, in the light of the principles just declared, be taken into consideration. These principles are of great importance in this case. For in determining whether the Bank's decedent was properly taxed as a fiduciary we must determine the nature of the estate which her husband created for her by will. The third clause of the will, already quoted, might, if it stood alone, indicate that she was given full dominion over the estate with power to dispose of it in its entirety and to transfer "an indefeasible title". However, the fourth and fifth clauses are of a character which have been held uniformly in California to create merely a life estate.[14]

9. Burnet v. Wells, supra, note 6, 289 U.S. at pages 678–679, 53 S.Ct. at page 764.

10. Commissioner of Internal Revenue v. Glenshaw Glass Co., 1955, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483. And see, Douglas v. Willcuts, 1935, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3; Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477; Rutkin v. United States, 1952, 343 U.S. 130, 138, 72 S.Ct. 571, 96 L.Ed. 833. Two quotations from earlier cases may serve to emphasize the determination of the courts from the beginning of income taxation to enforce the intent of the Congress to subject "every income to tax":

"The general object of this act is to put money into the federal treasury; and there is manifest in the reach of its many provisions an intention on the part of Congress to bring about a generous attainment of that object by imposing a tax upon pretty much every sort of income subject to the federal power." Helvering v. Stockholms Enskilda Bank, 1934, 293 U.S. 84, 89, 55 S.Ct. 50, 52, 79 L.Ed 211.
and
"The evident general purpose of the statute was to tax in some way the whole income of all trust estates." Helvering v. Butterworth, 1933, 290 U.S. 365, 369, 54 S.Ct. 221, 222, 78 L.Ed. 365.
And see, Helvering v. Clifford, 1940, 309 U.S. 331, 334–337, 60 S.Ct. 554, 84 L. Ed. 788.

11. Merchants' Loan & Trust Company v. Smietanka, 1921, 255 U.S. 509, 516–517, 41 S.Ct. 386, 65 L.Ed. 751; Helvering v. Horst, 1940, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75; Commissioner of Internal Revenue v. P. G. Lake, Inc., 1958, 356 U.S. 260, 266–267, 78 S.Ct. 691, 2 L.Ed.2d 743.

12. Burnet v. Harmel, 1932, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Heiner v. Mellon, 1938, 304 U.S. 271, 279, 58 S. Ct. 926, 82 L.Ed. 1337; Morgan v. Commissioner of Internal Revenue, 1940, 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 1035; Helvering v. Stuart, 1942, 317 U.S. 154, 161–162, 63 S.Ct. 140, 87 L.Ed. 154.

13. Higgins v. Smith, 1940, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; National Carbide Corp. v. Commissioner of Internal Revenue, 1949, 336 U.S. 422, 431–432, 69 S.Ct. 726, 93 L.Ed. 779; United States v. Kintner, 9 Cir., 1954, 216 F.2d 418–424. See the writer's opinion in Pacific Magnesium, Inc. v. Westover, D.C. 1949, 86 F.Supp. 644, 647–648 (and cases cited in footnotes 4–6 of that opinion) affirmed in Pacific Magnesium, Inc. v. Westover, 9 Cir., 1950, 183 F.2d 584.

14. Hardy v. Mayhew, 1910, 158 Cal. 95, 98–104, 110 P. 113; Luscomb v. Fintzelberg, 1912, 162 Cal. 433, 440–443, 123 P. 247; In re Estate of Tooley, 1915, 170 Cal. 164, 166–168, 149 P. 574; Adams v. Prather, 1917, 176 Cal. 33, 37–39, 167 P. 534; Colburn v. Burlingame, 1923, 190 Cal. 697, 701–705, 214 P. 226, 27

## III.

### Life Estate Holders as Fiduciaries.

The California cases also hold that the duty of the holder of the life estate to protect the rights of those in remainder are

"a duty in the nature of a trust constituting him an implied or *quasi* trustee *for the remaindermen.*" [15] (Emphasis theirs.)

In tax matters the trend in the federal courts is to apply the designation "fiduciary" to many relationships involving trust and confidence, whether they are such under State law or not. Illustrative are: A corporation retaining dividends declared pending determination of the stock's ownership, in litigation between stockholder and alien custodian, was held to be a "fiduciary" holding them in trust.[16] So was the receiver of a corporation to whom securities were turned over by a member of the stockholders' committee pending a decision as to the persons entitled thereto.[17]

Where an estate was condemned by a City and the life tenant chose to take a portion of the award in lieu of an income for life and the remainder of the award was placed in custody of a City official to hold for the remaindermen, the City official was held to be a fiduciary required to make a return on the earnings of the funds held by him for the remaindermen.[18]

In another case in which the Government sued an Indian allottee's heirs to cancel an allotment, the receiver appointed to lease lands for oil and gas purposes was held to be a fiduciary.[19]

■ Significantly, here the decedent chose to designate her position as that of a fiduciary. And the principle is applicable that a taxpayer who chooses a method for transacting business is held accountable for the tax consequence of his choice.[20]

## IV.

### No Unfettered Domain.

■ If we apply the principles just discussed to the facts before us, the conclusion is inescapable that the life tenant did not have such unfettered dominion over the property as to make the capital gain resulting from the sale of the securities taxable in her hands as owner.[21] For she was (a) liable for

A.L.R. 1374; In re Estate of Foley, 1954, 126 Cal.App.2d 810, 812–814; 273 P.2d 26; In re Estate of Smythe, 1955, 132 Cal.App.2d 343, 346–350, 282 P.2d 141; Hill v. Thomas, 1955, 135 Cal.App.2d 672, 676–679, 288 P.2d 157. *This has been so interpreted for tax purposes by our Court of Appeals.* Mead v. Welch, 9 Cir., 1938, 95 F.2d 617, 618–619. And it accords with the rule elsewhere. 33 Am.Jur., Life Estates, § 27.

15. Hardy v. Mayhew, supra, note 14, 158 Cal. at page 104, 110 P. at page 117; Bliss v. Security-First National Bank of Los Angeles, 1947, 81 Cal.App.2d 50, 56, 183 P.2d 312; King v. Hawley, 1952, 113 Cal.App.2d 534, 537–538, 248 P.2d 491; In re Estate of Toler, 1957, 49 Cal. 2d 460, 466, 319 P.2d 337; And see, Restatement, Property, § 202, c. (d) p. 831.

16. Ferguson v. Forstmann, 3 Cir., 1928, 25 F.2d 47, 48–49.

17. Hart v. Commissioner of Internal Revenue, 1 Cir., 1932, 54 F.2d 848, 850.

18. Buckley v. Commissioner of Internal Revenue, 2 Cir., 1933, 66 F.2d 394, 396–397.

19. Commissioner of Internal Revenue v. Owens, 10 Cir., 1935, 78 F.2d 768, 773–774. This case was followed in American Nat. Bank of Sapulpa v. Harris, 10 Cir., 1936, 84 F.2d 181, 182–183. Its definition of "fiduciary" was adopted in Hamby v. St. Paul Mercury Indemnity Company, Inc., 4 Cir., 1954, 217 F.2d 78, 80.

20. Pacific Magnesium, Inc. v. Westover, supra, note 13.

21. Corliss v. Bowers, supra, note 7, 281 U.S. 376, 50 S.Ct. 336; Smither v. United States, D.C.Tex., 1952, 108 F.Supp. 772, affirmed United States v. Smither, 5 Cir., 1953, 205 F.2d 518. Cases to the contrary to which the Government refers are distinguishable because they were decided under state laws different from ours. DuPuy v. Commissioner of Internal Revenue, 1935, 32 B.T.A. 969, decided under law of Pennsylvania; United States v. National City Bank of New York, D.C.N.Y. 1937, 21 F.Supp. 791, decided under the law of New York; Mercer v. Commissioner of Internal Revenue, 1946, 7 T.C. 834, decided under Washington law; Russell v. Commissioner of Internal Revenue,

**916**

waste of the estate;[22] (b) she could have been required to give security to prevent waste;[23] and (c) she could not will the estate or give it away without consideration.[24] And herein lies the distinction between the situation presented here and that which the Court of Appeals had before it in the Cooke case.[25] The instrument which that Court had under consideration there gave to the life tenant much broader powers than the one before us. It is printed in the margin.[26]

These clauses, the majority held, were so broad that the life tenant could not be impeached[27] if she wasted the estate or sold it for inadequate consideration [(a) and (c)]. No security for preser-

vation of the estate could be required of her [(b)]. If she

"conveyed by way of gift all the stock to a corporation, say, for a charitable use, the corporation could not be compelled to return it."[28]

And there was no remedy in equity

"of obtaining a return of the stock from the knowing buyer",[29]

if on sale of the shares she appropriated all the proceeds to her own use [(c)].

■ A federal trial judge is not bound by the opinion of even his own Court of Appeals, "in a case which may be differentiated".[30] The distinctiveness in

1941, 45 B.T.A. 397, decided under the law of New Jersey; Oppenheimer v. Commissioner of Internal Revenue, 1951, 16 T.C. 515, decided under New York law. But see, Todd v. Commissioner of Internal Revenue, 1941, 44 B.T.A. 776, 780–785, where a different conclusion is reached under Ohio law.

22. See cases cited in Note 15. And see, California Civil Code, § 818.

23. Bliss v. Security-First National Bank, supra, note 15, 81 Cal.App.2d at pages 54–55, 183 P.2d at pages 314, 315; In re Garrity, 1895, 108 Cal. 463, 470–474, 41 P. 485; 53 Am.Jur., Life Estates, § 225.

24. Hardy v. Mayhew, supra, note 14, 158 Cal. at pages 101–104, 110 P. at pages 115–117; Adams v. Prather, supra, note 14, 176 Cal. at pages 40–41, 167 P. at pages 537, 538.

25. United States v. Cooke, supra, note 5.

26. "Know All Men by These Presents: That I, Richard A. Cooke, of Honolulu, Hawaii, in consideration of natural love and affection, hereby transfer and assign all of the following described property— 2,000 shares of the capital stock of Charles M. Cooke, Limited, to my wife, Dagmar S. Cooke, to have and to hold the same to my wife for the term of her natural life, with the right to use all income therefrom, and after her death the remainder in equal shares to those who shall survive my wife of our children and of the issue of any of our children who shall predecease my wife, such issue taking per stirpes by right of representation, their heirs and assigns forever. "My said wife shall have full authority to sell, transfer, and exchange said prop-

erty and to reinvest the proceeds and to manage and control said property, reinvestments and proceeds, and to exercise all rights and power of ownership with respect thereto. The proceeds and all reinvestments shall likewise be subject to a life interest in my said wife with remainder over as aforesaid. *My said wife shall hold said property during her life without impeachment for waste and shall not be required to give any security for the safekeeping or preservation of the same. No person purchasing from or otherwise dealing with my wife shall be liable to see to application by my wife of the proceeds of any sale or to the propriety of any other action taken by my wife.*" United States v. Cooke, supra, note 5, 228 F.2d at pages 668–669. (Emphasis added.)

27. United States v. Cooke, supra, note 5, 228 F.2d at page 669.

28. United States v. Cooke, supra, note 5, 228 F.2d at page 669.

29. United States v. Cooke, supra, note 5, 228 F.2d at page 669.

30. 21 C.J.S. Courts § 197, p. 346. See, Terry v. New York Life Ins. Co., 8 Cir., 1939, 104 F.2d 498, 504–505. This is a permissible exception to the general rule that a judge of an inferior court is bound by decisions of courts of last resort, whether he agrees with them or not. See, 21 C.J.S. Courts § 197, pp. 341–342; Terry v. New York Life Ins. Co., supra, 104 F.2d at page 504; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, 839; Penfield Co. of California v. Securities and Exchange Commission, 9 Cir., 1944, 143 F.2d 746, 749, 154 A.L.R. 1027; Gardella v. Chandler, 2 Cir., 1949,

the terms of the instrument before us having been shown, I am of the view that while the gain involved here was not taxable in the hands of the decedent "as owner", it was, nevertheless, so taxable to her as a "fiduciary". The definition of "fiduciary" which is contained in the same regulation accords with the judicial view [31] and is comprehensive enough to cover the decedent. It is reproduced in the margin.[32]

## V.

### The Definition of "Trust" in the Regulation.

The conclusion just reached is not impaired by the definition of "trust" contained in the regulation which has already been quoted.[33] An analysis of the entire regulation indicates that the Treasury Department was endeavoring, in that particular section, to classify "taxable groups". Indeed, the section of the regulation in which the definition is found is entitled "Classification of Taxables".[34] And Paragraph (1) sets forth the object of the regulation, namely, to classify various entities for tax purposes, regardless of the manner in which they are regarded by local law. It is reprinted in the margin.[35]

Having stated this object, the regulation proceeds to define various entities, the first of which is "association".[36] The next one is entitled "Association Distinguished from Trusts".[37] In its definitions from (a) to (e) the various elements of distinction for tax purposes are set forth, the first of which is the definition of "trust" contained in (a) on which reliance is placed here. Then follow definitions of "partnership"; [38] "Limited Partnership"; [39] "Partnership Association"; [40] "Insurance Companies"; [41] "Domestic, Foreign, Resident and Non-Resident Persons"; [42] "Fidu-

172 F.2d 402, 404–405; United States v. Dollar, 9 Cir., 1952, 196 F.2d 551, 553; Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404, 409; United States v. Twin City Power Company of Georgia, 5 Cir., 1958, 253 F.2d 197, 205. And see the writer's opinion, In re Lindsay-Strathmore Irr. Dist., D.C.1937, 21 F.Supp. 129, 134–135.

31. See cases cited in Notes 15, 16, 17, 18 and 19.

32. 1939 Income Tax Regulations, supra Note 3, § 39.3797–9. See, Weil v. United States, U.S.Ct.Cl., 60–1 USTC § 9229, interpreting a similar life estate, which under Alabama law was subject to the same restrictions as to (a) preservation of the property and (b) security against waste as apply under California law. See, Frye v. Community Chest of Birmingham and Jefferson County, 1941, 241 Ala. 591, 4 So.2d 140, 146–148.

33. 1939 Income Tax Regulations, supra Note 3.

34. 1939 Income Tax Regulations, supra Note 3, § 39.3797–1.

35. "For the purpose of taxation the Internal Revenue Code makes its own classification and prescribes its own standards of classification. Local law is of no importance in this connection. Thus, a trust may be classed as a trust or as an association (and, therefore, as a corporation), depending upon its nature of its activities. See § 39.3797–3. The term 'part-

nership' is not limited to the common law meaning of partnership, but is broader in its scope and includes groups not commonly called partnerships. See § 39.3797–4. The term 'corporation' is not limited to the artificial entity usually known as a corporation, but includes also an association, a trust classed as an association because of its nature or its activities, a joint-stock company, an insurance company, and certain kinds of partnerships. See §§ 39.3797–2 and 39.3797–4. See section 191 and the regulations thereunder, for recognition as a partner of any person who owns a capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person." 1939 Income Tax Regulations, supra Note 3, § 39.3797–1.

36. 1939 Income Tax Regulations, supra Note 3, § 39.3797–2.

37. 1939 Income Tax Regulations, supra Note 3, § 39.3797–3.

38. 1939 Income Tax Regulations, supra Note 3, § 39.3797–4.

39. 1939 Income Tax Regulations, supra Note 3, § 39.3797–5.

40. 1939 Income Tax Regulations, supra Note 3, § 39.3797–6.

41. 1939 Income Tax Regulations, supra Note 3, § 39.3797–7.

42. 1939 Income Tax Regulations, supra Note 3, § 39.3797–8.

ciary";[43] "Fiduciary Distinguished from Agent";[44] "Military or Naval Forces and Armed Forces of the United States";[45] and finally, "Collectors and Directors".[46]

So it is evident that the Treasury Department merely intended to differentiate the concepts it was defining from their meaning under local law. It did not intend to narrow the scope of the taxing statute itself. Treasury regulations made pursuant to revenue statutes must be limited to the matters to which they relate.[47]

Ordinarily, they will be given full effect if they constitute reasonable interpretations of, and are consistent with, the revenue statutes.[48] But if their interpretation would add to a revenue statute conditions which cannot be gathered from the statute itself, the courts will disregard them or refuse to give effect to them, as lacking validity.[49]

It is the writer's opinion that the definition of "trust" does not, in the regulation under consideration, in any way limit the scope of Section 161(a) (1) of the Internal Revenue Act of 1939, and of Section 7851(a) (1) (A) of the 1954 Act. The reason, as already appears, is that there was no apparent intention to do so,—the Treasury Department was merely defining the various entities that are subject to taxation. If the definition under discussion be considered a narrowing or limitation of the "trust" contained in the taxing statute, it must be disregarded as invading the province of the courts which, alone, have the power to determine what is taxable under the statute. Otherwise, the regulation would create a "no-man's land" by leaving a transaction untaxable, contrary to the purpose of the revenue acts,

> "to reach all gain constitutionally taxable unless specifically excluded." [50]

Hence the conclusion that the decedent was properly taxed as a fiduciary.

This conclusion is also commanded by the fact that the instrument before us, as already appears (Part IV), is narrower in scope than the instrument in Cooke.[51] The differences are striking and subject the life tenant to control as a quasi-trustee to which the life tenant in Cooke [52] could not have been subjected. Here

> "the controlling difference is in the language of the two * * * clauses" [53]

which makes the language of Cooke inapplicable to "the proper construction" [54] of the instrument before us. And we are bidden to limit the general language of an opinion of even the highest court

43. 1939 Income Tax Regulations, supra Note 3, § 39.3797–9.

44. 1939 Income Tax Regulations, supra Note 3, § 39.3797–10.

45. 1939 Income Tax Regulations, supra Note 3, § 39.3797–11.

46. 1939 Income Tax Regulations, supra Note 3, § 39.3797–12.

47. Gilbert v. Commissioner of Internal Revenue, 9 Cir., 1957, 241 F.2d 491, 493.

48. Fawcus Machine Company v. United States, 1931, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; Gilbert v. Commissioner of Internal Revenue, supra Note 47; Granquist v. Hackleman, 9 Cir., 1959, 264 F.2d 9, 16.

49. Helvering v. Credit Alliance Corp., 1942, 316 U.S. 107, 113, 62 S.Ct. 989, 86 L.Ed.

1307; Helvering v. Sabine Transportation Co., Inc., 1943, 318 U.S. 306, 311–312, 63 S.Ct. 569, 87 L.Ed. 773; Granquist v. Hackleman, supra, note 48.

50. General American Investors Co., Inc., v. Commissioner of Internal Revenue, 1955, 348 U.S. 434, 436, 75 S.Ct. 478, 479, 99 L.Ed. 504. For an earlier declaration to the same effect see Irwin v. Gavit, supra, note 8, 268 U.S. at page 166, 45 S.Ct. at page 476. For a later declaration see Commissioner of Internal Revenue v. LoBue, 1956, 351 U.S. 243, 246, 76 S.Ct. 800, 100 L.Ed. 1142.

51. United States v. Cooke, supra, note 5.

52. United States v. Cooke, supra, note 5.

53. Terry v. New York Life Ins. Co., supra, note 30, 104 F.2d at page 504.

54. Terry v. New York Life Ins. Co., supra, note 30, 104 F.2d at page 505.

to the situation and facts before the court [55] because

"general expressions transposed to other facts are often misleading." [56]

Judgment will, therefore, be for the defendant that the plaintiff take nothing by the Complaint. Judgment and findings to be prepared by counsel for the defendant under Local Rule 7, West's Ann.Cal.Code.[57]

---

55. See, 14 Am.Jur., Courts, § 79, pp. 291–293; Safe Deposit and Trust Company of Baltimore v. Commonwealth of Virginia, 1929, 280 U.S. 83, 94, 50 S.Ct. 59, 74 L.Ed. 180; White v. Aronson, 1937, 302 U.S. 16, 21, 58 S.Ct. 95, 82 L.Ed. 20.

56. Armour & Co. v. Wantock, 1944, 323 U.S. 126, 132–133, 65 S.Ct. 165, 168, 89 L.Ed. 118. The classic statement of this principle and the reasons behind it are those by Mr. Chief Justice Marshall in Cohens v. Virginia, 1821, 6 Wheat. 264, 399–400, 5 L.Ed. 257.

"It is a maxim, not to be disregarded, that *general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they* *may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.* The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." (Emphasis added.)

57. Since this opinion was filed, the Court of Appeals for the Ninth Circuit *has repudiated the Cooke case.* See, United States v. De Bonchamps, et al., —— F.2d ——, decided on April 8, 1960.