[Civ. No. 29150.   Second Dist., Div. Four.   Feb. 8, 1966.]

Estate of FLORENCE C. STEINER, Deceased.   CARL STEINER, Individually and as Executor, etc., Petitioner and Respondent, v. MARJORIE LEWALLEN et al., Objectors and Appellants.

John K. Ford and Leonard T. Cain for Objectors and Appellants.

Robert E. Krause for Petitioner and Respondent.

BISHOP, J. pro tem.*—We have before us an appeal by the "heirs at law of the above-named decedent" taken from the "ORDER NUNC PRO TUNC CORRECTING ORDER SETTLING FIRST AND FINAL ACCOUNT AND DECREE OF DISTRIBUTION." We have concluded that the order appealed from amended the decree of distribution as to matters of substantial importance, and that, under the circumstances revealed, a *nunc pro tunc* order was not authorized.

We quote, first of all, from the portion of the decree of distribution material to this appeal. The asterisks with numbers, in parentheses, we have added for future reference. After the opening recitals, and two specific bequests to Carl Steiner, the decree continues:

"and that all other property of said estate, whether described herein or not, be and the same hereby is distributed as follows:

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

"To: CARL STEINER, (*1*) for and during his natural life, with the right to subdivide, sell, establish a tract (subdivision type), naming Carl Steiner as Beneficiary, (*2*) upon condition that the residual beneficiaries receive forty-five per cent (45%) of the net income therefrom;

and that upon the death of the said CARL STEINER the residue of said estate, hereinabove referred to, to the following persons (*3*) and in the respective proportions set forth after their respective names: . . ."

The decree then set forth the names of the mother, three sisters and three brothers of the testatrix, and followed with some other provisions not of importance to our consideration.

More than 27 months after the decree of distribution was filed, at the motion of the executor the *nunc pro tunc* order appealed from was signed and filed. It expressly deleted "All provisions in said Final Decree which purport to provide for distribution of said Estate," and then proceeded to restate all that we quoted above with several additions. At the point indicated by (*1*) in our quotation, these words were inserted: "together with all the rents, issues, benefits and income, to do with as he sees fit." Immediately following the passage just quoted, the words "during his lifetime" were substituted in place of "for and during his natural life," and some other changes of as little consequence were made.

At our (*2*) three words were added: "during his lifetime." At point (*3*) we find: "provided they are living at the time of the death of Carl Steiner."

In a number of other places variations appear between the text of the final decree of distribution and that of the *nunc pro tunc* corrected version, but none of them effect a change in the meaning. They fall, therefore, within the principle enunciated in *Estate of Careaga* (1964) 61 Cal.2d 471, 474-475 [39 Cal.Rptr. 215, 217, 393 P.2d 415, 417]: ". . . it is clear that a court, by means of a *nunc pro tunc* order, can clarify a decree by removing a superfluous word where its removal does not alter the meaning or legal effect of the original decree. Such a correction is clerical. Such a correction does not change the meaning or legal effect of the decree." In characterizing the alteration as "clerical" the Supreme Court was plainly differentiating between one of no importance and one of substance, not between a provision that was the expression of judicial determination and one

that was a slip of the pen or a misstatement of a judicial decision. ■ We, accordingly, determine that the *nunc pro tunc* order appealed from should not be condemned because it substituted ''during his lifetime'' for the longer expression ''for and during his natural life,'' or made other like inconsequential changes.

■ Two of the differences between the ''final'' decree of distribution and the one that undertook to amend it are not to be so lightly regarded. The one first noted, whereby the bequest of all other property of the estate to Carl Steiner for life had added the words, ''together with all the rents, issues, benefits and income, to do with as he sees fit,'' may be construed to give him rights that, without the last seven words, he would not otherwise have had.

■ The philosophy of section 818, Civil Code, has not been limited to real and immovable property, but has been applied to personal property as well. Note discussion in *Bliss* v. *Security-First Nat. Bank* (1947) 81 Cal.App.2d 50, 55 (183 P.2d 312, 315-316] following the sentence: ''The owner of a life estate is required by law to do no act to the injury of the inheritance. (Civ. Code, § 818.)'' ■ Even so, a life tenant may, if given the power, expend as well as make use of the property distributed to him. (*Estate of Smythe* (1955) 132 Cal.App.2d 343, 346 [282 P.2d 141, 143] et seq., with authorities.) As noted in *Hardy* v. *Mayhew* (1910) 158 Cal. 95, 104 [110 P. 113, 139 Am.St.Rep. 73] technically he is not a trustee, but he has the duty of operating with due regard for the rights of the remaindermen. (See also *King* v. *Hawley,* (1952) 113 Cal.App.2d 534 [248 P.2d 491].) ■ Under the terms of the decree of distribution as it originally stood, Carl Steiner could use the devised property but could not use it up. But the *nunc pro tunc* order would have made a substantial change. Under its influence the life tenant would be given all other property of the estate ''to do with as he sees fit.'' The words ''together with all the rents, issues, benefits and income,'' added little if anything to the power that was inherent in the words of the decree, but the seven words with which the insertion concluded appear to refer back to the property with which the rents, etc. were ''together'' and as increasing his authorized control over it. Such an amendment cannot be characterized as other than substantial.

■ The alteration in the decree of distribution which we have designated as (*3*) was fully as substantial and so is

not to be approved. The case of *Hardy* v. *Mayhew, supra,* involved a will that left $40,000 to a father for life, the residue upon his death to go to his three children and a grandchild in equal shares, and the decree of distribution followed its direction. The Supreme Court said (158 Cal. at p. 104 [110 P. at p. 117]): "Necessarily any interest in property created by a will is to be adjudicated and distributed by decree of distribution, and the fact that it is a future interest in respect to the time of enjoyment is immaterial." Shortly earlier (158 Cal. at p. 103) the court had declared: "The decree of distribution operated to remove all the property from the estate . . . and to distribute to the remaindermen the interest which they were thereby determined to have under the will. . . . There is therefore nothing in the claim that further proceedings were essential in the estate . . . upon the death of [the life tenant]." (See also *Estate of Loring* (1946) 29 Cal.2d 423, 427 [175 P.2d 524, 527].)

By the decree under scrutiny, accordingly, the rights of the remaindermen were adjudicated.[1] They appear to have an indefeasibly vested remainder, and upon the death of any one of them before the death of the life tenant, his share would become a part of his estate. (*Estate of Wallace* (1938) 11 Cal.2d 338 [79 P.2d 1094]; *Estate of Newman* (1956) 146 Cal.App.2d 780, 782 [304 P.2d 748]; and see *Estate of Newman* (1964) 230 Cal.App.2d 158, 162 [40 Cal.Rptr. 785].)

If the *nunc pro tunc* order should be allowed to change the decree, so that those who now appear to be remaindermen should become such only if they survived the life tenant, their interests would be substantially altered; they would become contingent remainders. (*Rhoda* v. *County of Alameda* (1933) 134 Cal.App. 726, 732 [26 P.2d 691, 694].) The *nunc pro tunc* order may not be approved, as it is now made to appear, because it may not work so substantial a change.

■ It should be noted that the *nunc pro tunc* order did not originate the two passages that we have said effected substantial changes in the final decree. They appear in the will and in the "FIRST AND FINAL ACCOUNT, REPORT AND PETITION FOR FINAL DISTRIBUTION," to which a copy of the will

---

[1]Note: The appellants have identified themselves by their notice of appeal as the "heirs." As such they have no concern with the effect of the *nunc pro tunc* order. But the remaindermen, who do have a concern, are at least some of the heirs. No question has been raised as to the effect of the "heirs" appealing. We interpret the notice as an appeal by the remaindermen.

was attached and by reference made a part. It may be said, therefore, that the final decree was erroneously written in not including these two passages. If it was erroneous, however, that did not justify a *nunc pro tunc* correction. How did it happen that the final decree omitted these important words? There is no clear answer. In support of his motion for the *nunc pro tunc* order the executor's attorney filed an affidavit and then an amended affidavit in which he pointed out the discrepancies between the will and the final decree, and which he attributed to "inadvertence, mistake and clerical error." But no fact, other than the failure to follow the language of the will, was set forth to support the contention that that was the nature of the error. The final decree of distribution was signed, a little less than two years before the hearing of the motion, by Judge John F. McCarthy. The motion was made before Judge Frank C. Charvat, and the *nunc pro tunc* order signed by the latter. No evidence was taken at the hearing on the motion; it was based on the record. In his argument to Judge Charvat counsel repeatedly made such statements as these: ". . . in the order which your Honor made based upon the account which was before your Honor, . . ."

"Your Honor made the order in court which provided . . . 'Final account settled and distribution ordered. . . .' "

"That was the order which your Honor made with reference to the account, . . ."

"All we are attempting to do is carry out the order which your Honor made in the account which was before your Honor."

We wonder, did the judge who was listening to the argument gain the impression that it was he who had made the decree of distribution, and decide that on the record before him he must have intended to follow strictly the terms of the will and his failure to do so was but an inadvertent slip?

But it was not he who had signed the decree of distribution. The judge who had signed the decree was available as a witness but never called nor was his deposition taken. He may well have checked the terms of the decree with those of the prayer of the petition for final distribution, signed by that dual personality—the executor and the main beneficiary of the will—Carl Steiner. If so, he found that that prayer was that "an order be made for distribution" of "All of the rest, residue and remainder of said estate: To: CARL STEINER, for and during his natural life . . . and that upon the death

of the said CARL STEINER the residue of said estate to the following persons. . . ." His decree of distribution was in accordance with this prayer. It may have been error, but there is nothing to justify the conclusion that it was an inadvertent slip, not a mistake of judgment, without which an order correcting the final decree, long since final, may not be made *nunc pro tunc.*

Admittedly we are dealing with the type of situation where the lines between inadvertent clerical errors and errors which are judicial are not always clearly discernible. As stated in *Estate of Doane* (1964) 62 Cal.2d 68, 71 [41 Cal. Rptr. 165, 168, 396 P.2d 581, 584] : "In determining whether an error is clerical or judicial, great weight should be placed on the declaration of the judge as to his intention in signing the order."

We have no such declaration. So apt is it to our situation that we adopt as a summary of our position this passage from *Estate of Eckstrom* (1960) 54 Cal.2d 540, 547-548 [7 Cal.Rptr. 124, 129, 354 P.2d 652, 657] :

". . . the only matters bearing on the question of the judge's intentions in the case now engaging our attention are the petition for, proceedings on and the judgment of final distribution, all of which indicate that the trial judge performed an intentional, if erroneous, act. The decree complied strictly with the prayer of the petition. They both were prepared by the executor who was also the trustee prejudicially affected. The decree was approved by the attorneys for the other beneficiaries and by the probate commissioner. It cannot be determined from the face of the original decree that even a judicial error had been made. On the other hand there is nothing of significance to indicate that the court intended to make a different decree, other than the conclusion that the court ought to have done so. An examination of the petition would suggest to the discerning mind that an inconsistency existed between recitals in the petition and the prayer thereof, but there is nothing to suggest that even such an error was clerical in nature. The moving party failed to call as a witness the trial judge who made the original order, who admittedly was available and who could testify as to an intention other than that appearing of record, if he in fact had entertained such an intention. (See *People* v. *Curtis,* 113 Cal. 68, 71 [45 P. 180].) The order made is presumed to be that intended in the absence of contrary evidence (*Livesay* v.

*Deibert,* 3 Cal.App.2d 140, 146-147 [39 P.2d 466]), and the fact of error alone cannot rebut that presumption.''

The order appealed from is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied March 1, 1966, and respondent's petition for a hearing by the Supreme Court was denied April 22, 1966. Peters, J., was of the opinion that the petition should be granted.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.