WILLY ZIETZ AND ELISABETH D. ZIETZ, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49427.   Filed May 31, 1960.

*Benjamin Busch, Esq.*, for the petitioners.
*Charles M. Greenspan, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge:* The chief question is whether legal fees in the total amount of $9,977 constitute nonbusiness expenses paid for conserving or maintaining property held for the production of income within the scope of section 23(a)(2) of the 1939 Code,[1] or are capital expenses. Although the problems which required the employment of attorneys fall roughly into two classes, the question with respect to each class is essentially the same.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

84 T.C.

In *Estate of Hedwig Zietz*, 34 T.C. 351, in connection with a determination of the Commissioner that securities having a value of $697,504.29, located in New York City, were includible in the estate of Hedwig Zietz, it was held that under German law, the will of Hugo Zietz gave Hedwig an interest in his estate which was substantially similar to that of a life estate with a power of invasion, and that Willy's interest in the estate is comparable to a remainder interest. It was concluded, therefore, that upon the death of Hedwig, the remaining property in the estate passed to Willy under his father's will, and did not pass from his mother to him. It was held further that under German law joint bank accounts created by Hugo were not joint tenancy accounts in which Hugo's wife owned an interest but belonged to Hugo and became part of his estate. It was also held that under German law, in view of the nature of Hedwig's interest under her husband's will, it was proper for her to hold securities, bank accounts, and other property in her own name, and that such procedure did not enlarge her interest from what is comparable to a life estate to a fee simple estate. It was concluded that upon Hedwig's death the remainder of the estate of Hugo immediately became Willy's property, and that it was of no legal consequence that for his own reasons and convenience he continued to hold some of the Hugo Zietz estate property under the designation "Estate of Hedwig Zietz" or "Hedwig Zietz."

One of the respondent's reasons for taking the view that some of the legal fees in question are not deductible is that they were paid out of bank accounts in Switzerland in the name "Estate of Hedwig Zietz." The evidence shows that regardless of such designation the Swiss bank accounts were the property of the petitioner. He has established that he was the owner of the funds with which he paid the fees, and that he was not paying them for or on account of the estate of Hedwig. Respondent's contentions to the contrary are incorrect in view of petitioner's proof about applicable German law and the correct construction of the will of Hugo Zietz under German law.

The chief issue for decision is whether all or some of the fees in dispute were ordinary and necessary expenses paid for the management, conservation, or maintenance of Willy's property held for the production of income within section 23(a)(2).

We shall consider first the legal fees totaling $6,330 which were paid to lawyers who represented Willy Zietz in connection with the litigation instituted on behalf of Madeleine Halmos.

The circumstances and facts in this case are unique. There appears to be no case which is clearly in point. The petitioner relies upon principles stated in *Bingham's Trust* v. *Commissioner*, 325 U.S. 365; *Allen* v. *Selig*, 200 F. 2d 487, affirming 104 F. Supp. 390; and *Northern Trust Co.* v. *Campbell*, 211 F. 2d 251.

Respondent relies on the defense-of-title rule under which expenditures in defense of title of property are capital items to be added to the cost of property. *James C. Coughlin*, 3 T.C. 420, 423; *Porter Royalty Pool, Inc.*, 7 T.C. 685, affd. 165 F. 2d 933, certiorari denied 334 U.S. 833; *Levitt & Sons* v. *Nunan*, 142 F. 2d 795; *Bowers* v. *Lumpkin*, 140 F. 2d 927, certiorari denied 322 U.S. 755. He contends, also, that the fees were the expense of Hedwig's estate.

It is true that in some instances Vogt's actions in Switzerland were brought against the estate of Hedwig Zietz, but in the actions dealing with Vogt's efforts to attach property, Willy Zietz was the defendant. However, we are unable to regard it as significant that the petitioner did not have bank accounts and other accounts changed to his name. Since Willy was the sole survivor in the Zietz family, since most of the assets inherited by him were derived from the estate of Hugo Zietz and passed to him under Hugo's will immediately upon Hedwig's death, no probate administration was required and there was no practical need for his segregating the comparatively small amount of Hedwig's own personal estate of a value of $37,500 (apart from her personal belongings) from the assets derived from Hugo's estate having a value of around $1 million. We shall consider hereinafter the question of the deductibility of legal fees totaling $3,647 which were paid to lawyers who appeared in matters involving alleged taxes on the estate of Hedwig. With respect to the litigation instituted in behalf of Madeleine Halmos, we deem it clear that the purpose of that litigation was to attempt to reach part of the assets derived from the estate of Hugo Zietz, Sr. That is because, under Hugo's will, both of his sons were to share equally in the remainder of his estate. Madeleine, claiming to be his widow and heir, was seeking to attach the assets derived from the father's estate to which heirs of Hugo, Jr., would have been entitled.

Hedwig died intestate. It is clear that whatever might be involved in any bona fide claim of an heir of Hugo, Jr., if he had had any, to a share in Hedwig's own personal estate, such claim would be comparatively small compared to an heir's claim to Hugo, Jr.'s interest in the remaining estate of Hugo Zietz, Sr. Therefore, since Hedwig's personal estate was small, and for all practical purposes *de minimis* as far as Madeleine's purposes were concerned, we deem it correct, in considering the fees of $6,330 paid to lawyers engaged by petitioner in the litigation of Madeleine, to regard them as relating to petitioner's inheritance under his father's will, and as having no relevance to the personal estate of Hedwig. To take any other view unnecessarily complicates consideration of the question. If such other view were taken, however, and an allocation of $6,330

were to be made between legal expenses incident to Willy's inheritance from the estate of Hugo, Sr., and Hedwig's personal estate, the amount of such legal fees allocable to a charge to Hedwig's estate would be so small as to be, again, *de minimis*, and, therefore, we shall consider the issue of the deductibility of legal fees of $6,330 as involving only petitioner's inheritance under his father's will.

With respect to the litigation instituted by or for Madeleine for which petitioner paid legal fees of $6,330 in 1948, the record shows that Madeleine was endeavoring to take away from Willy assets derived from his father's estate.

The question, therefore, is whether the legal fees paid to resist Madeleine's legal actions should be classified as nondeductible capital expenses, or ordinary and necessary expenses paid for the conservation of Willy's property held for the production of income within the meaning of section 23(a)(2).

The situation here is one which requires practical application of the tax statute in an unusual setting. In the first place, it was judicially determined by several Swiss courts that the claims of Madeleine were wholly without merit and malicious. Madeleine had no valid basis for seeking to obtain any of the assets which had passed to the petitioner under his father's will upon the death of his mother. That was her purpose. Vogt obtained a temporary order attaching accounts and securities. At a hearing on February 18, 1947, in Zurich, petitioner's lawyer made an application for the immediate vacatur of the warrant of attachment and for the imposition of security to protect Willy from any loss which might result from any fluctuation in the value of the income-producing securities which had been attached. The securities were owned by the petitioner at that time. During the above proceeding, the court issued an order to Vogt to furnish security in the sum of about $100,000.

It would be inaccurate and unrealistic to say that Madeleine's suits were bona fide attacks on petitioner's title to the property which he had inherited from his father. Respondent's assumption that such was the nature of the litigation is too narrow. Madeleine, through Vogt, sought to tie up and attach petitioner's income-producing securities and cash. Petitioner's attorneys were obliged to act to fend off the attempt to attach petitioner's securities. There was no litigation about petitioner's title to the securities. Vogt's petitions, which if allowed to stand might have raised that issue, were dismissed. Vogt proceeded like a creditor seeking to levy attachment on chattels to obtain payment of an established debt.

Petitioner's expenditures for legal fees bore a proximate and direct relation to keeping his income-producing property free from attachment under a malicious claim wholly without merit. If Vogt had

succeeded in obtaining a permanent order attaching the securities, petitioner would have lost the income from the securities, temporarily at least, and according to the views expressed by his banks to the court, he might have sustained losses because of fluctuations in the market prices of the attached securities.

In *Selig* v. *Allen*, 104 F. Supp. 390, the court pointed out that the taxpayer's real purpose in taking certain action and incurring legal expenses was "to prevent the laying waste of her property. Mere perfection of disputed title was not the Plaintiff's purpose. She brought the suit in order to conserve income producing property which she already owned. * * * her property, if treated as part of Simon Selig's estate, could have been sold by the executors under the powers given them in his will. It seems clear that legal action taken to forestall such depletions and possible sale of her property is conservatory in nature."

In *Frederick E. Rowe*, 24 T.C. 382, we considered whether a taxpayer paid legal fees to defend or perfect her title to a remainder interest in a testamentary trust, as the Commissioner contended. We concluded upon the facts that the taxpayer had not paid legal fees to acquire or perfect title but, rather, to conserve and maintain the taxpayer's remainder interest in the corpus of a trust by having left in the trust, as part of the trust corpus, the trust income which was withheld from the life beneficiary in the form of reserves for depletion of oil- and gas-producing properties. We referred to and considered *Selig* v. *Allen, supra.* We held that the legal fees involved were paid for the conservation or maintenance, or both, of property held for the production of income within the meaning of section 23(a)(2).

Our conclusion here is that petitioner's purpose in incurring the legal fees paid to resist Vogt's efforts to attach and tie up some of his securities, which he owned as part of the remainder of the assets of his father's estate, was not to perfect his title to the securities but was to maintain and conserve his income-producing property. The legal expense bore a reasonable and proximate relation to the conservation of property held for the production of income. Cf. *Bingham's Trust* v. *Commissioner, supra.* It is held that the legal fees amounting to $6,330 fall within the scope and meaning of section 23(a)(2) and are deductible as ordinary and necessary nonbusiness expense.

There remains for consideration the legal expense incurred in connection with petitioner's efforts to have the value of assets derived from his remainder interest in assets of his father's estate excluded from the value of his mother's separate estate which tax departments

in Switzerland and the United States, respectively, had determined were part of his mother's estate. Respondent's view with respect to these expenses is, briefly, that they were expenses of the estate of Hedwig Zietz, or were for the purpose of defending petitioner's title to the property derived from his father's estate.

It is true that both the Zurich tax department and our Internal Revenue Service made determinations of the value of what each believed constituted all of the property in the estate of Hedwig for the purposes of the respective estate taxes. In presenting to the tax officials, in each instance, evidence and legal argument about the construction of Hugo's will under German law, and about the respective interests of the surviving spouse and the sons, as first heir and final heirs, it was not petitioner's primary purpose to obtain a determination of, or to perfect, or defend his title to the assets constituting the remainder of his father's estate. Also, it was not petitioner's purpose to contest an estate tax upon what he believed was in fact and in law the personal and separate estate of Hedwig. For example, petitioner was not contending that an inter vivos gift of Hedwig out of her own property was not intended to take effect at or after death and, therefore, was not includible in her estate for the purpose of estate tax. If petitioner had been making such contention, he would have appeared before each group of tax officials as a representative, or administrator, of his mother's intestate estate, and the legal expenses involved would seem to be the expense of Hedwig's estate.

Rather, the situation here resembles that in *Northern Trust Co.* v. *Campbell*, *supra*, and *Selig* v. *Allen*, *supra*. If the Zurich tax department had prevailed and had attempted to collect an estate tax based upon the inclusion in Hedwig's estate of the assets derived from Hugo's estate, it is evident that the property which had been Hedwig's own property would not have been sufficient to pay the assessed tax and there would have been resort to assets derived from Hugo's estate which had passed directly to and were owned by petitioner. His property would have been diminished by such tax. The same reasoning applies to the determination of the Internal Revenue Service from which this case arose. Petitioner incurred the expenses of having Herzog appear at the hearing in Zurich, and of having Domke present a brief on German law to the Internal Revenue Service in New York in order to forestall the depletion of some of his own property which stood in danger of having to be sold or applied to the payment of taxes on Hedwig's estate. Petitioner undertook successfully in Zurich to have excluded from his mother's estate property which had passed directly to him under his father's will. He is attempting to do the same thing here, this case being a con-

tinuation of the procedure first undertaken by petitioner when he retained Domke in the first instance.

In *Bertha K. Goldberg*, 31 T.C. 258, the taxpayer used her own personal funds to pay a deficiency which had been assessed in the estate tax of her deceased husband's estate. She then incurred legal expense to obtain a refund of the tax and was successful. Bertha Goldberg had contributed to the payment of the estate tax deficiency to avoid a possible assessment against her as a transferee of her husband's estate. In *Northern Trust Co.* v. *Campbell, supra,* the taxpayer had paid an estate tax deficiency as the transferee of assets of his father's estate. As a transferee there was a personal liability in him. In the *Goldberg* case we concluded that the legal expense incurred by Bertha Goldberg to obtain a refund of the tax which she claimed was invalid had a direct and proximate relation to the conservation of her own income-producing property. In so holding, we applied the same reasoning which had been employed in the *Selig* and *Northern Trust Co.* cases, which we regarded as being in harmony with the reasoning in *Bingham's Trust* v. *Commissioner, supra.* The fact that petitioner did not pay the legal expense in question in a suit for refund of payment of a tax is of no consequence. Here, as in the cited cases, the nature of the legal expense had a direct relation to conserving and also maintaining petitioner's property which was income-producing property.

It is held that the legal fees paid to Herzog and Domke in the amount of $3,647 are deductible under section 23(a)(2).

As we said in the *Goldberg* case (p. 268), we do not think the facts of the instant case bring it within the rule of those cases decided in this Court which have held "that expense incurred in the defense of title must be capitalized." This case is distinguishable from *Hermann F. Ruoff*, 30 T.C. 204, revd. 277 F. 2d 222, and cases there cited.

*Decision will be entered for the petitioners.*