WILLIAM S. BERTRAM AND MELINDA BERTRAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bertram v. Commissioner
Docket No. 1432-77.
United States Tax Court
T.C. Memo 1978-247; 1978 Tax Ct. Memo LEXIS 266; 37 T.C.M. (CCH) 1058; T.C.M. (RIA) 78247; July 5, 1978, Filed John A. McNamara, for the petitioners. Jerome Borison, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies of $ 20,501 and $ 9,107 in petitioners' Federal income taxes for the years 1972 and 1974, respectively. Concessions have been made by the parties. The only issue remaining for decision is whether legal fees paid by petitioners in connection with the testamentary trust of the husband-petitioner's grandfather were capital expenditures *267 or deductible ordinary and necessary expenses to conserve income producing property. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. William S. Bertram (hereinafter referred to as petitioner) and Melinda Bertram reside in Santa Rosa, California. For the taxable years 1972 and 1974 they filed joint Federal income tax returns with the District Director, Internal Revenue Service Center, Fresno, California, on the cash receipts and disbursements method of accounting. On April 11, 1919, Henderson Montgomery Green, grandfather of petitioner (hereinafter referred to as grandfather) executed a will (hereinafter referred to as grandfather's will) which provided that his assets be placed in trust (hereinafter referred to as grandfather's trust) with the United States Trust Company of New York (hereinafter referred to as U.S. Trust Company or trustee) as a trustee. The will provided that the trust income was to be paid to grandfather's mother for life and upon her death, or should she predecease him, to his wife, Margaret S. Green (hereinafter referred to as grandmother), *268 and upon her death, or should she predecease grandfather, to his daughter, Nancy Green Bertram (hereinafter referred to as petitioner's mother). Grandfather's will also granted a general testamentary power of appointment over the assets in his will to his wife or daughter. On March 10, 1941, grandfather died, having been predeceased by his mother. Between January 6, 1943, to and including November 28, 1969, the U.S. Trust Company acted as trustee of grandfather's trust in accordance with the terms specified therein. The administration of his trust was subject to the jurisdiction of the Probate Division, Essex County Court, State of New Jersey. On April 23, 1941, petitioner's grandmother executed a will. After specific bequests, the residue of grandmother's estate was devised to petitioner's mother. On May 12, 1941, grandmother died and, in accordance with the terms of her will, the residue of her estate passed to mother. Mother, by written instrument, renounced the power of appointment given to her in grandfather's will. On November 12, 1964, mother executed a will. After specific bequests, mother left the remainder of her estate in trust, which provided income for *269 life to her son, the petitioner in this case, and upon his death to his then living lawful issue, or, if none, to those appointed by petitioner. On March 27, 1968, mother's November 12, 1964 will was modified by a codicil making changes to specific bequests and appointing the Bank of Palm Beach and Trust Company, Palm Beach, Florida, as executor. Petitioner was the undisputed income beneficiary under the terms of the trust created by his mother's will of November 12, 1964. On February 14, 1969, mother died. At that time petitioner was 35 years old. On May 14, 1970, the Bank of Palm Beach and Trust Company timely filed on behalf of mother's estate a Federal Estate Tax Return with the Internal Revenue Service, West Palm Beach, Florida. After mother's death, petitioner conferred with Thomas Mettler, the attorney who represented the probate administration of her estate in Florida. Mettler advised him that his mother's renunciation of the power of appointment on June 1, 1943, could result in substantial financial burdens if certain legal constructions were interpreted to require the inclusion of the trust assets controlled by the power in his mother's estate for Federal estate *270 tax purposes. At the date of mother's death the fair market value of the trust assets was $ 1,427,867.32. Mettler advised petitioner that if these trust assets were required to be included in his mother's estate, the income producing assets and future income would be reduced by approximately $ 877,695 in additional expenses. Petitioner then retained Mettler to prevent a diminution of income producing assets of which he was the income beneficiary. Mettler and petitioner contacted the U.S. Trust Company and expressed concern that additional expenses would be incurred if the assets of grandfather's trust were required to be included in mother's estate for tax purposes. On June 9, 1970, U.S. Trust Company filed a complaint in the Superior Court of Essex County, New Jersey, against petitioner, his children and other named defendants to seek a judicial interpretation of grandfather's will. The complaint sought construction of the persons entitled to the trust fund created by grandfather in his will as a result of the facts that both grandmother and mother had not exercised their respective powers of appointment and grandfather had not provided for the disposition of the remainder *271 interest in the trust fund in the event of a default of this exercise of power of appointment. Because the suit involved the jurisdiction of New Jersey, petitioner also retained the law firm of Riker, Danzig, Scherer and Brown, located in Newark, New Jersey. On September 21, 1971, the Superior Court of New Jersey, Chancery Division, Essex County, issued its opinion in the matter. The Court stated that the question was: "Now that the last surviving life tenant has died, to whom should the trustee pay over the trust fund?" It was further stated that the alternatives for disposition of the trust assets in determining the construction of the will were either intestate distribution of this portion of grandfather's estate or distribution under his will. The Court concluded in favor of the latter alternative and directed "the trustee to make distribution of the trust fund to William Stewart Bertram under the last will and testament of Henderson Montgomery Green." During the period from mother's death to the resolution of the U.S. Trust Company lawsuit, petitioner was recognized as the income beneficiary of all trusts involved. He regularly reported the income from his mother's testamentary *272 trust for Federal income tax purposes. In addition, U.S. Trust Company paid petitioner $ 750 per month as an income beneficiary of his grandfather's trust. For legal services rendered on his behalf in the lawsuit initiated by the U.S. Trust Company, petitioner paid the following sums and deducted the following amounts as itemized deductions on his Federal income tax returns for 1972 and 1974: (a) 1972 - $ 67,617 - paid to the law firm of Riker, Danzig, Scherer and Brown; Newark, New Jersey. (b) 1974 - $ 67,617 - paid to the law firm of Baugher and Mettler; Palm Beach, Florida. In his notice of deficiency respondent determined that petitioner's legal fees were incurred to perfect or assert his rights to the property of his deceased grandfather as heir under his grandfather's testamentary trust. As a result, respondent categorized the fees as a capital expenditure in accordance with section 263 [1] and disallowed the claimed deductions. OPINION At issue is whether legal fees incurred by petitioner to obtain a judicial interpretation *273 of his grandfather's will were deductible as ordinary and necessary expenses for the management, conservation or maintenance of property held for the production of income under section 212(2), [2] or whether they must be treated as capital expenditures incurred in defending or perfecting title to property. The trustee of grandfather's testamentary trust filed suit in the New Jersey Superior Court for an interpretation of the will because neither petitioner's grandmother nor his mother exercised her respective power of appointment in grandfather's testamentary trust and the trust instrument made no provisions for the disposition of the remainder interest in the trust fund in event of a default in exercising the power of appointment. Petitioner was the present income beneficiary *274 and was named a party to the suit. Petitioner contends that he is entitled to deduct attorneys' fees in 1972 and 1974 because they were incurred to prevent the diminution of income producing assets of which he was the income beneficiary. In this stance he maintains that the legal fees originated in a profit seeking context for the conservation and preservation of property held for the production of income and, hence, are properly deductible under section 212(2). Respondent, on the other hand, argues that the legal expenses were incurred to secure a fee interest in property and are required to be capitalized in accordance with section 263. Respondent's position is based on two criteria: (1) that the expenditures originated from a lawsuit in which petitioner was a party for the purpose of defending or perfecting title to property, and (2) that the litigation was nothing more than a will contest to determine property rights and, consequently, the legal fees are not deductible but should be added to the basis of the property. We agree with respondent. The deduction of legal fees under *275 section 212 requires the determination of the purpose underlying the expenditures by reference to the "origin of the claim." United States v. Gilmore,372 U.S. 39 (1963). In Gilmore the Supreme Court held that the characterization of litigation costs is dependent upon the origin and character of the claim with respect to which an expense was incurred rather than its potential consequences or results. The characterization in the Gilmore case involved the distinction between personal and business legal fees, but the Supreme Court expanded this approach to distinguish between business expenditures, which are deductible, and capital expenditures, which are not deductible. See Woodward v. Commissioner,397 U.S. 572 (1970); United States v. Hilton Hotels Corporation,397 U.S. 580 (1970). Petitioner and respondent disagree on the "origin" for characterizing the legal fees. Petitioner asserts that his mother's death was the originating cause. He contends that the suit which was brought by the trustee to interpret his grandfather's will should be disregarded because it was the consequence rather than the origin of the power of *276 appointment default and occurred at a time when his primary interest was to protect the production of income already being disbursed to him. To the contrary, respondent characterizes the lawsuit by the trustee to determine title as the origin of the claim. Point of time is not the real issue here. Title is the linchpin of this case. Petitioner apparently considers his rights in the trust vested at the time his mother died. If his rights were vested at that time, he would have a colorable claim for the conservation of property for the production of income. Regardless of whether the events precluding the suit or the suit itself govern, however, at no time did petitioner have clear title; he had only the right to the income from whatever amount was considered as the corpus of the trust. The amount included in principal is in issue and that sum involves title. Thus, the underlying controversy is the ownership of those assets which his grandfather put into a testamentary trust. Despite several alternatives advanced by petitioner's counsel concerning the possible dispositions of the remainder interest, the New Jersey Superior Court stated the issue to be "who should receive the *277 trust fund now that the last surviving tenant had died." The Court then limited the choice to two alternatives, either intestate distribution or distribution under the grandfather's will. Petitioner similarly stated the question in his brief to the Superior Court: Should not paragraph FOURTH of the will of Henderson Montgomery Green be so construed as to vest the remainder of the trust fund created therein in William Stewart Bertram, as his only surviving grandchild… ? This Court agrees with the question as stated and considers the issue before the New Jersey Superior Court to be the same question at the time petitioner's mother died, since she was the last surviving tenant. The issue was title to the property. Therefore, we think this case falls within the purview of section 1.212-1(k), Income Tax Regs., which provides: (k) Expenses paid or incurred in defending or perfecting title to property, * * * constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; *278 * * * Expenses paid or incurred in protecting or asserting one's right to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible. (Emphasis added). The same provision is contained in section 1.263(a)-2(c), Income Tax Regs., which classifies "the cost of defending or perfecting title to property" as a specific capital expenditure. We believe the petitioner sought legal advice and set into motion the events which caused the suit to be instituted by the trustee for the purpose of determining the rights to the grandfather's remainder interest in the testamentary trust. In our judgment petitioner was not involved in the "management, conservation, or maintenance of property held for the production of income" as required by section 212(2). Instead, he sought to remove the cloud and perfect title to property of his grandfather as an heir. Petitioner's reliance upon Zietz v. Commissioner,34 T.C. 369 (1960), is misplaced. In Zietz, the taxpayer was a remainderman in the estate of his father with his mother having a life estate. Upon her death the United States and Swiss tax *279 authorities sought to include various assets of his father's estate in the estate of his mother for estate tax purposes. The analogy fails because, unlike this petitioner, the taxpayer in Zietz was always the undisputed owner of the remainder interest and there was no question as to his title in the securities. Petitioner's reliance upon Matthews v. United States,$ 3 425 F.2d 738 (Ct.Cl. 1970), is similarly misplaced because that case concerned a dispute between the trustee and the income beneficiary over management of assets. The question of title was never in issue. The Courts have consistently held that if perfection of a taxpayer's claim to ownership or title was the essence or real substance of the suit, the cost of litigation is a nondeductible capital expenditure. Spangler v. Commissioner,323 F.2d 913 (9th Cir. 1963); Commissioner v. Burgwin,277 F.2d 395 (3d Cir. 1960); Garrett v. Crenshaw,196 F.2d 185 (4th Cir. 1952); Boagni v. Commissioner,59 T.C. 708 (1973), Reed v. Commissioner,55 T.C. 32 (1970), *280 Ramos v. Commissioner,38 T.C. 820 (1962); Wilson v. Commissioner,37 T.C. 230 (1961). See also Hofstead v. Commissioner,T.C. Memo. 1962-238.In the recent case of Cruttenden v. Commissioner,70 T.C. 191 (1978), this Court permitted a section 212(2) deduction for legal fees relating to recovery of stocks because title to the stocks remained in the taxpayers even though they loaned the stocks to a corporation in which they were minority shareholders. Following a corporate reorganization the taxpayers incurred legal fees to recover the stocks from the corporation. The Court stressed in both its majority and concurring opinions that the legal expenses paid by the taxpayers in no manner related to the title of the securities loaned to the corporation. Petitioner's case is distinguishable because title here was not vested. Accordingly, we hold that the legal fees in question were costs resulting from obtaining the rights and title to property. As such, they were capital expenditures and, therefore, are not deductible. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise specified, section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- * * *
(2) for the management, conservation, or maintenance of property held for the production of income; * * *↩